## Malinowski's Estate

*Bryan* and *Evans*, for petitioner; *F. T. Nagorski* and *F. A. Bliley*, contra.

WAITE, P. J., February 23, 1933.—Letters of administration upon the estate of Felix Malinowski were granted to Thomas S. Mszanowski, upon petition of William F. Schaller, of the firm of Hanley & Schaller, Inc., funeral directors, who, by reason of their services in taking care of the body of the decedent and its burial, became creditors of the estate for the funeral expenses, amounting to $536.50. The petition sets forth the names of Anna Malinowski, mother, and Frank Malinowski, brother, residing at Lubienica, Poland, as the only next of kin.

Felix Malinowski died on November 15, 1932; the letters of administration were issued on December 3, 1932. On January 3, 1933, Jennie Malinowski filed a petition with the register of wills, asking for the revocation of the letters and setting forth, inter alia, that she is the widow of the decedent and resides at Mahwah, New Jersey, and that Thomas S. Mszanowski is in no way related to the decedent. On January 25, 1933, after hearing the testimony, the register refused to revoke the letters for the reason stated, to wit:

"It was stated by the register that although he believed that Jennie Malinowski was married to Felix Malinowski, it was a debatable question from the testimony received whether Jennie Malinowski deserted Felix Malinowski in 1917,

thereby forfeiting a widow's rights in this estate, as per the act of assembly, P. L. 1917, at page 429 (Intestate Act, section 6) ; or whether Felix Malinowski deserted Jennie Malinowski."

A petition was presented to the orphans' court and citation awarded on January 26, 1933. The matter was heard de novo, testimony taken and the questions involved ably argued before the court, by counsel for both petitioner and respondent.

If Jennie Malinowski, surviving widow, were a resident of Pennsylvania, no one could doubt her right to administer the estate of her deceased husband. Her marriage to the decedent was both amply proven and admitted by the present administrator. In an application for first papers of citizenship, made by the decedent only a few months before his death, he acknowledged that he had a wife, "Jennie". No testimony was offered even tending to show desertion of the husband by the surviving widow. After the husband went away to enter the service of his country in the Polish Army in the World War (in itself, a commendable thing to do) his wife, then only 18 years of age, was left among strangers, without means of support, and 3 days thereafter returned to the home of her parents in New Jersey, where she has since continued to reside.

The only testimony reflecting in any way upon her conduct is a letter offered in evidence, which L. L. Salsbury, cashier of the Marine National Bank of Erie, a witness offered by respondents as an expert on signatures, testified was signed by Jennie Malinowski, although he would not say that the letter written in Polish was in her handwriting. He further testified that the envelope in which the letter was found (and apparently mailed) 'among decedent's papers, was not in her handwriting. Jennie Malinowski positively denies that she wrote or signed the letter and further testified that she came to this country when only 3 years of age; was educated in the public schools of New Jersey, and that she can neither read nor write the Polish language. Under these circumstances we cannot say that we are convinced that she either wrote or signed the letter. But even if she did, there is nothing in the letter to show desertion of the decedent by her. She testified, and it was not denied, that she was at all times willing to return to and live with the decedent; that on one occasion he said he was going to ask her to return to him, but later said he had changed his mind.

We must therefore conclude that there was no desertion of the decedent by Jennie Malinowski and that her continuing to make her home with her parents was with his knowledge and consent. The widow's rights in the estate of the decedent were not, therefore, overthrown. See Lawton's Estate, 266 Pa. 558.

Has the widow lost the right to administer this estate by reason of the fact that she is not a resident of Pennsylvania? Under section 22 of the Act of March 15, 1832, of which section 2(c) of the Fiduciaries Act of 1917, P. L. 447, is a reënactment, it was held in some of the early Pennsylvania cases, including Frick's Appeal, 114 Pa. 29, and Sharpe's Appeal, 87 Pa. 163, that residence within the State of Pennsylvania was necessary, but under the practice that has grown up in Pennsylvania under recent legislation, we do not understand these decisions to be controlling in the present case. .

The Act of June 7, 1917, P. L. 447, section 2(c), as amended by the Act of May 13, 1925, P. L. 687, section 1, provides, inter alia:

"Whenever letters of administration are by law necessary, the register having jurisdiction shall grant them, in such form as the case shall require, to the surviving spouse, if any, . . . . Provided, That if such decedent was a married person, the surviving spouse shall be entitled to the administration, in preference to all other persons."

The language of the statute is mandatory and seems to allow the register no other altenative, if the surviving spouse is competent to act and not otherwise disqualified. But the act makes no provision, either directly or by implication, that the surviving spouse shall be a resident of Pennsylvania.

The conditions which existed when the Act of 1832 was passed have greatly changed. The means of travel and communication have been so facilitated that the register's office may now be more accessible to the resident of an adjoining State than it was formerly to the resident of the same county, so that the reason for the rule laid down in Frick's Appeal and Sharpe's Appeal, supra, no longer exists. Since the passing of the Fiduciaries Act of June 7, 1917, P. L. 447, the practice of appointing administrators outside the State has become quite common. Recognizing this practice, the legislature of Pennsylvania, by the Act of April 27, 1927, P. L. 475, required a nonresident administrator or executor to appoint a local attorney-in-fact before taking out either letters testamentary or of administration. True, that act does not in so many words say that a nonresident may be appointed either administrator or executor. But the act appears to have been passed in recognition of the practice that had grown up throughout the State and implies very clearly that nonresidents of Pennsylvania may be appointed to administer the estate of a deceased resident of this State. Since the passage of this act, it has been the practice in this county to appoint nonresident administrators and executors, on compliance with the requirements of the act, by appointing a local attorney-in-fact.

We do not intend to reflect in any way upon the ability and good faith of Thomas S. Mszanowski, the administrator appointed by the register, and in view of what was said in some of the early Pennsylvania cases, including Frick's Appeal, 114 Pa. 29, and Sharpe's Appeal, 87 Pa. 163, it might very properly be held that the appointment of the administrator in this estate was not improvidently made and should not now be disturbed, considering the additional expense to be imposed upon the estate by the appointment of a new administrator. But it was later held in Neidig's Estate, 183 Pa. 492, 496, that, although the administrator appointed is well qualified to perform the duties of administration, that is immaterial if his appointment was obtained without the knowledge or consent of any distributee and when it is now sought to have the administrator retained, against the protest of the widow. "To permit this to be done would be violative both of the rules of business and of the principles of law."

In Scanlon's Estate, 2 Dist. R. 742, Archbald, P. J., said:

"The widow is given a preference above all others in the administration of her husband's estate, and can only be excluded upon some sufficient and clearly established ground. Disagreement between herself and her husband in his lifetime, however serious, can hardly be regarded as enough, nor mere differences after his death with other members of the family."

In Neidig's Estate, 183 Pa. 492, Biddle, P. J., of the court below, said:

"The opinion of Judge Watson in Jones's Appeal, 10 W. N. C. 249, which was adopted by the Supreme Court, contains the following apposite language on this subject: 'I feel very confident that no case can be found where it has been held that the register is at liberty to disregard the clearly expressed wishes of the parties preferred by the law and entitled to the estate, whether they be residents of this commonwealth or beyond its borders, and grant letters to a total stranger.' "

As we have already said, there is nothing in the testimony before the court to cast even a suspicion upon the rights of the widow. The ultimate distribution of

the estate is not now before the court. That question may be determined when reached.

And now, to wit: February 23, 1933, the appeal is sustained and it is ordered that the letters of administration in the estate of Felix Malinowski, deceased, which were granted to Thomas S. Mszanowski, Esq., be and the same are hereby revoked; and it is further ordered that letters in said estate be issued by the register of wills to Jennie Malinowski, the widow, upon the appointment of an attorney-in-fact, as required by the Act of April 27, 1927, P. L. 475, and upon the filing of a proper bond to be approved by the court.

From Otto Herbst, Erie, Pa.